UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTHONY CLARK,

      Plaintiff,

v.                                            Case No. 8:22-cv-434-CPT

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,

      Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of his claim for Supplemental Security Income (SSI).   For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1976, has a limited education, and has no past relevant work experience.  (R. 19).  In May 2019, the Plaintiff applied for SSI, alleging disability as of June 2016 due to diabetes, depression, blurry vision, difficulty walking, a heart condition, left leg pain, high blood pressure, and left-hand numbness with a lack of strength.  (R. 11, 148).  The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration.  (R. 159, 171).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in August 2021. (R. 100–36, 178). The Plaintiff was represented by counsel at that proceeding and testified on his own behalf. (R. 100, 104–31). A vocational expert (VE) also testified. (R. 131–36).

In a decision issued in August 2021, the ALJ found that the Plaintiff: (1) had not engaged in substantial gainful activity since the date of his application in May 2019; (2) had the severe impairments of asthma, psoriasis, morbid obesity, obstructive sleep apnea, diabetes mellitus with complications, cervical and lumbar degenerative disc disease, and mild left osteoarthritis of the second and third digits; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[1] (4) had the residual functional capacity (RFC) to perform sedentary work with additional physical and environmental limitations; and (5) based on the VE's testimony, could engage in a number of occupations that were sufficiently prevalent in the national economy. (R. 13–20). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 20).

The Appeals Council denied the Plaintiff's subsequent request for review. (R. 1–4). Accordingly, the ALJ's decision became the final decision of the

---

[1] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). When a claimant's affliction(s) match an impairment on the list, the claimant is automatically entitled to disability benefits. *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

Commissioner.  *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

## II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a).[2]   A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations prescribe "a five-step, sequential evaluation process."  *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[3] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listed impairments; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience.   *Id.* (citing *Phillips v. Barnhart*, 357 F.3d

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

1232, 1237 (11th Cir. 2004); 20 C.F.R. § 416.920(a)(4)).   Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five.   *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   If the Commissioner carries that burden, the claimant must then prove he cannot engage in the work identified by the Commissioner.   *Goode*, 966 F.3d at 1279.   In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the claimant's disability application after a hearing.   42 U.S.C. § 405(g).   Judicial review is confined to determining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence.   *Id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted).   Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted).   In evaluating whether substantial evidence bolsters the

4

Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's determination. *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)).   While a court will defer to the Commissioner's factual findings, it will not defer to her legal conclusions. *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

III.

The Plaintiff's principal challenge on appeal is that the ALJ did not properly develop the record because he did not order a consultative examination (CE) "to determine [the Plaintiff's] level of reading and writing." (Doc. 19).   After careful review of the parties' submissions and the record, the Court finds that the Plaintiff's challenge lacks merit.

It is well settled that an ALJ has a basic and firmly-established duty to compile a full and fair record of the information pertinent to a claimant's application for benefits. *Washington*, 906 F.3d at 1364; *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007).   This duty, however, does not obligate an ALJ to order a CE whenever there is evidence that a claimant may suffer from an impairment.   Instead, an ALJ "may purchase a [CE] to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to support a determination or decision on

5

[a] claim." 20 C.F.R. § 416.919a.  Consequently, an ALJ need not exercise his discretion in favor of obtaining a CE as long as the record contains enough evidence for him to make an "informed decision." *Ingram*, 496 F.3d at 1269 (citing *Doughty*, 245 F.3d at 1281); *see also Nation v. Barnhart*, 153 F. App'x 597, 598 (11th Cir. 2005) (per curiam) (noting that an ALJ need not seek additional independent expert medical testimony if the record is adequate and such additional testimony is not necessary for an "informed decision") (citations omitted).

A claimant seeking remand on the grounds that an ALJ did not secure a CE must demonstrate not only that the ALJ erred in doing so, but also that the claimant was harmed by the ALJ's decision on the matter.  *See Mosley v. Comm'r of Soc. Sec.*, 633 F. App'x 739, 742 (11th Cir. 2015) (per curiam) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).  Only where "'the record reveals evidentiary gaps which result in unfairness or clear prejudice'" may a court find that remand is warranted.  *Id.* (quoting *Brown*, 44 F.3d at 935); *see also Goode*, 966 F.3d at 1280 (observing that "[r]emand for further factual development of the record . . . is appropriate where the record reveals evidentiary gaps which result in unfairness or clear prejudice") (internal quotation marks and citation omitted).  Ultimately, the claimant bears the burden of proving he is disabled and must therefore produce sufficient evidence to support his application.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam).

In this case, relevant to the issues before the Court, the Plaintiff represented in a June 2019 disability report, *inter alia*, that he completed the tenth grade, that he could

6

"read and understand English," that he could "write more than [his] name in English," and that he did not have any "emotional or learning problems."  (R. 300, 302, 304). The Plaintiff's records from a period during which he was incarcerated also reveal that he had no history of special education.  (R. 372).  In addition, the Plaintiff did not claim in his application for SSI that he suffered from any learning disabilities or had any difficulties with reading and writing.  (R. 301).

Nonetheless, in contrast with the above documentation and his own self-reports, the Plaintiff claimed to the ALJ at the hearing that while he admittedly finished the ninth or tenth grade, he "was in a bunch of special [education] classes" and encountered problems at school with learning to read and write.  (R. 105).  The Plaintiff also asserted, *inter alia*, that although he sometimes looked at text messages or Facebook, he could not read a recipe but could read street signs, and that he had to have others "read stuff" to him to ensure he understood it.  (R. 105–06).

After the Plaintiff addressed the ALJ's inquiries at the hearing, the Plaintiff was examined by his own attorney.  (R. 112–29).  At no point during counsel's ensuing colloquy with the Plaintiff did counsel follow-up on or clarify the extent to which the Plaintiff could read or write.  *Id.*  In fact, the Plaintiff's lawyer did not touch upon the issue at all.  *Id.*

Upon the completion of the attorney's questioning of the Plaintiff, the ALJ posed two hypotheticals to the VE.  (R. 131–33).  The operative hypothetical for purposes of the Court's analysis here assumed a person with the Plaintiff's age,

education, work experience, and the same limitations as those the ALJ ultimately incorporated into his RFC determination. (R. 131–32). In response to the ALJ's query as to whether there were any jobs in the national economy that such a hypothetical individual could perform, the VE identified three occupations: document preparer, printed circuit board screener, and lens inserter. *Id.*

The Plaintiff's lawyer was then afforded an opportunity to examine the VE. (R. 133–36). During the course of counsel's discussion with the VE, the two engaged in the following exchange:

Atty: . . . [W]hat's the reasoning level of each one of these jobs?

VE: The document preparer is reasoning level [three]. The printer circuit board screening is reasoning level [two], and the lens inserter is reasoning level [one].[4]

Atty: Okay. *And if the worker has a limited education and has difficulty reading, would that affect the document preparer position*?

VE: *Not in my opinion, no.*

Atty: Okay.

---

[4] These reasoning levels are defined as follows: "Level 1—Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job;" "Level 2—Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations;" "Level 3—Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *See* Dictionary of Occupational Titles (DOT), App'x C (4th ed. 1991), 1991 WL 688702. Reasoning levels range from one to six, with one being the lowest and six being the highest. *Id.*

(R. 133) (emphasis added).  Plaintiff's counsel made no further inquiries about the document preparer position specifically or whether the Plaintiff's reading and writing capabilities would interfere with his capacity to perform the other two jobs designated by the VE.  (R. 133–36).

In his decision, the ALJ attested that he gave "careful consideration [to] the entire record," including the extent to which the Plaintiff's symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]"  (R. 13, 16).  After subsequently finding the VE's testimony to be both "valid and persuasive[,]" the ALJ concluded that based on this testimony and considering the Plaintiff's age, "limited education," work experience, and RFC, the Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (R. 19–20).

Against this backdrop, the Plaintiff's claim that the ALJ should have ordered a CE to assess the Plaintiff's reading and writing levels fails.  To begin, there is case law in this District that an argument not raised before an ALJ cannot later be pursued on appeal.  *See, e.g.*, *Crider v. Comm'r of Soc. Sec.*, 2018 WL 3628847, at *5 (M.D. Fla. June 12, 2018) (citing *Bechtold v. Massanari*, 152 F. Supp. 2d 1340, 1347 (M.D. Fla. 2001), *aff'd*, 31 F. App'x 202 (11th Cir. 2001); *Avila v. Astrue*, 2012 WL 5831287, at *11 (N.D. Ind. Nov. 15, 2012)), *report and recommendation adopted*, 2018 WL 3620722 (M.D. Fla. July 30, 2018).

This line of authority appears to apply here.  The Court notes in this regard that, as alluded to above, the Plaintiff did not identify any deficits associated with reading and writing in his disability application despite listing a plethora of other unrelated issues, including problems with his vision, heart, leg, and hand.  (R. 301).  Moreover, in a pre-hearing memorandum submitted to the ALJ, Plaintiff's counsel recounted a variety of ailments that purportedly restricted the Plaintiff's capacity to work but did not mention any limitations with respect to the Plaintiff's ability to read or write.  (R. 352–53).

In addition, as referenced earlier, the Plaintiff's attorney had a number of chances to raise the Plaintiff's alleged reading and writing issues with the ALJ but failed to do so.  Indeed, at the outset of the hearing, counsel did not dispute the ALJ's description of the Plaintiff's impairments as consisting of "diabetes with neuropathy, degenerative disc disease of the cervical and lumbar spine, psoriasis, asthma, morbid obesity[,] chest pain, hypertension, depression, [and] cannabis related disorder."  (R. 103).  And when the ALJ then sought confirmation from the Plaintiff's lawyer that these were all the conditions in question, counsel responded: "Yes sir.  I think you pretty much covered all the different impairments."  *Id*.  Further, when asked moments later whether the record was complete, counsel answered in the affirmative.  (R. 104).

Even assuming the Plaintiff has not waived his challenge regarding his reading and writing abilities, this claim fails in any event because he does not show that the ALJ lacked sufficient evidence to make an informed decision on the matter and that

any evidentiary gaps in the record clearly prejudiced him.  *Goode*, 966 F.3d at 1280; *Mosley*, 633 F. App'x at 742.  As to the first prong of this analysis, as discussed previously, there is evidence outside of the Plaintiff's hearing testimony that the Plaintiff finished the tenth grade, that he could read, understand, and write in English, and that he did not attend any special education classes.  (R. 300, 302, 304, 372).  In addition, to the extent the Plaintiff may have experienced some difficulties with reading and writing, the VE testified at the hearing that an individual with the Plaintiff's age, employment history, "*limited education*[,] and *difficulty reading*" would be able to perform the document preparer position.  (R. 133) (emphasis added).  This testimony by the VE, coupled with the Plaintiff's own documented statements that he could read and write and that he completed at least a portion of high school, supplied the ALJ with an adequate basis on which to make a knowledgeable determination as to the Plaintiff's reading and writing capabilities.  *See Ingram*, 496 F.3d at 1269 (stating that an ALJ need not exercise his discretion to enlist a CE as long as the record contains enough evidence for him to make an informed decision) (citing *Doughty*, 245 F.3d at 1281).  Accordingly, it was unnecessary for the ALJ to order a CE, especially since the Plaintiff did not raise his claimed reading and writing problems until the time of the ALJ hearing.  *See Hethcox v. Comm'r of Soc. Sec.*, 638 F. App'x 833, 835 (11th Cir. 2015) (per curiam) (finding that the ALJ was not required to order a psychiatric CE and seek objective IQ testing where the claimant "did not allege a mental disability in her disability report," even though her "testimony about her impairments and [her

doctor's] initial report indicat[ed] that she had below-average intelligence"); *Wilson v. Comm'r of Soc. Sec.*, 2017 WL 2389521, at *4 (M.D. Fla. Apr. 4, 2017) (concluding that the ALJ was not compelled to order a psychological exam where the claimant's mental status was first raised at the ALJ hearing), *report and recommendation adopted*, 2017 WL 2379827 (M.D. Fla. June 1, 2017); *Latham v. Berryhill*, 2017 WL 1090659, at *3–4 (N.D. Ala. Mar. 23, 2017) (declining to remand a claimant's case for further development of the record where the claimant first complained of hand pain related to carpel tunnel syndrome at the ALJ hearing).

Nor does the Plaintiff demonstrate that he has suffered the requisite clear prejudice.  In an effort to make such a showing, the Plaintiff avers that the document preparer and printed circuit board screener positions both have a language level of two,[5] which he suggests is beyond his capabilities.  (Doc. 19).  Even assuming this is true, the remaining occupation that the Plaintiff does not mention—lens inserter—has a language level of one.  DOT # 713.687-026, 1991 WL 679273 (G.P.O. Jan. 1, 2016). And the Plaintiff concedes in his memorandum that his ability to read is "equivalent to a level one reading."  (Doc. 19).  By the Plaintiff's own reasoning, this acknowledgment, particularly when combined with the other evidence discussed above, is fatal to any claim of prejudice, much less clear prejudice.

---

[5] The Plaintiff seemingly equates the phrase "language level" with "reading level."  (Doc. 19).  While the Court will accept this claimed equivalency solely for purposes of its analysis here, it bears noting that the former descriptor is utilized in the DOT, while the latter is not.  Further, neither appears to be used in the Selected Characteristics of Occupations to which the Plaintiff refers.  *Id*.

The Plaintiff relatedly argues—albeit in summary fashion—that "[h]ad the [ALJ] found [he] had a reading level of one, there would have been a conflict between the information in the [DOT] with respect to the [document preparer and printed circuit board screener] jobs[,]" which the ALJ "would [then] have had to address." (Doc. 19).  This contention is likewise unavailing.

As an initial matter, the Plaintiff's claim is wholly perfunctory and devoid of any supporting argument or authority.  As such, it is waived.  *See Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 899 (11th Cir. 2022) (deeming an issue forfeited because it was "raise[d] in a perfunctory manner without supporting arguments and authority") (internal quotation marks and citation omitted); *Battle v. Comm'r, Soc. Soc. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019) (per curiam) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.") (internal quotation marks and citation omitted); *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (per curiam) (finding that a plaintiff waived an argument "because he did not elaborate on [the] claim or provide citation to authority about [it]") (citation omitted).  Even were that not the case, the Plaintiff does not mention, much less establish, how he prevails on this argument given the availability of the lens inserter position.

Although not entirely clear, the Plaintiff additionally appears to argue that in the absence of ordering a CE, the ALJ was required to explain the basis for his purported finding that the Plaintiff's reading and writing abilities were not as limited

13

as the Plaintiff asserted them to be at the hearing. (Doc. 19). This contention fails as well. While the ALJ did not specifically discuss the Plaintiff's alleged reading and writing difficulties in his decision, it was not necessary that he do so. This is because the Court is satisfied for the reasons set forth above that the ALJ considered the entirety of the Plaintiff's condition, including his reading and writing capabilities, in rendering his disability determination. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [a] court . . . to conclude that [the ALJ] considered [the claimant's] medical condition as a whole'") (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 2005) (per curiam)).

To the extent the Plaintiff asserts that the ALJ erred in his evaluation of the Plaintiff's subjective complaints, including the Plaintiff's purported reading and writing deficiencies, he does not cite the governing standard or provide any argument on the issue. As a result, he has waived any such contention. *See Harner*, 38 F.4th at 899 (citation omitted); *Battle*, 787 F. App'x at 687 (citation omitted); *Outlaw*, 197 F. App'x at 828 n.3 (citation omitted).

Finally, to the extent the Plaintiff now urges the Court to reconsider the evidence and to assign greater weight to his hearing testimony, the Court may not engage in such an exercise on appeal. *Viverette*, 13 F.4th at 1314; *Carter*, 726 F. App'x at 739. Nor is the Court persuaded by the Plaintiff's efforts to highlight portions of the

record he believes buttresses his position.  As the Eleventh Circuit has stated, "[u]nder a substantial evidence standard of review, [a claimant] must do more than point to evidence in the record that supports [his] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)).  The Plaintiff has not done so here.

IV.

For the foregoing reasons, it is hereby ORDERED:

1.      The Commissioner's decision is affirmed.

2.      The Clerk is directed to enter Judgment in the Defendant's favor and to close the case.

SO ORDERED in Tampa, Florida, this 31st day of March 2023.


HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record